IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STRASBURG-JARVIS INC.,            )
                                  )
            Plaintiff,            )
                                  )
v.                                )
                                  )   No. 06-2552-CM
                                  )
RADIANT SYSTEMS, INC.,            )
RETAIL CONTROL SYSTEMS, INC.,     )
SYNCHRONICS, INC., DAVID ALBERT,  )
and JEFFREY GOLDSTEIN,            )
                                  )
            Defendants.           )
                                  )

## MEMORANDUM AND ORDER

Plaintiff Strasburg-Jarvis, Inc., a children's clothing manufacturer and retailer, originally brought this action against defendants Radiant Systems, Inc. ("Radiant") and Retail Control Systems, Inc. ("RCS"), respectively the owner/licensor and dealer for software that plaintiff intended to install on its computers. Plaintiff then added claims against the following additional defendants: (1) Synchronics, Inc. ("Synchronics")—a corporation that held title to trademarks and other assets related to the software; (2) David Albert—the founder, owner, and president of RCS; and (3) Jeffrey Goldstein—the founder, owner, director, and president of Synchronics. Pending before the court is a motion filed by defendants Synchronics and Goldstein, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 65). Defendant Goldstein argues that the court lacks personal jurisdiction over him. Both defendants argue that the claims against them are subject to a mandatory arbitration agreement and are otherwise subject to dismissal.

**A.**   **Personal Jurisdiction**

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). To demonstrate personal jurisdiction sufficient to defeat a motion to dismiss, a plaintiff need only make a prima facie showing that jurisdiction exists. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). In ascertaining the facts necessary to establish jurisdiction, the court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by the defendant's affidavits. *Id*. The plaintiff, however, has the "duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The complaint and any affidavits submitted are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff. *Fed. Deposit*, 959 F.2d at 174.

In analyzing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court must determine whether the defendant's conduct falls within one of the provisions of the Kansas long-arm statute, Kan. Stat. Ann. § 60-308, and whether the exercise of jurisdiction would offend the constitutional guarantee of due process. *See Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir. 1990). But "these inquiries are for all intents and purposes the same because the Kansas long-arm statute . . . has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause." *Flannagan v. Bader*, 905 F. Supp. 933, 936 (D. Kan. 1995) (citing *Thompson v. Chambers*, 804 F. Supp. 188, 195 (D. Kan. 1992)). The court therefore proceeds directly to the constitutional inquiry. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citation omitted); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir. 1994).

-3-

Plaintiff does not argue that the court has general jurisdiction over defendant Goldstein. Accordingly, the court only looks at whether it has specific jurisdiction over defendant Goldstein.

To determine whether specific jurisdiction is appropriate, the court must first decide whether the defendant has such minimum contacts within the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, the court must then consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Calif., Solano County*, 480 U.S. 102, 113 (1987).

*1. Minimum Contacts*

A plaintiff meets the minimum contacts requirement by showing that (1) the defendant purposely availed himself of the privilege of conducting activities within the forum state—thereby invoking the benefits and protections of the state's laws—and (2) the claims against him arise out of or relate to those contacts. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996) (citation omitted).

Plaintiff's brief focuses only on the Kansas long-arm statute. It does not address the constitutional inquiry at all. That said, the court will consider whether plaintiff's arguments show that asserting jurisdiction over defendant Goldstein would not offend due process.

a.  Purposeful Availment

Construing plaintiff's arguments as constitutionally-based, plaintiff essentially claims that defendant Goldstein purposely availed himself of the privilege of conducting activities in Kansas by engaging in the following conduct: (1) he sent a "critical email" to Kansas; (2) he sent one of his "best people" to Kansas to ask Strasburg to reconsider its cancellation of the contract with defendant RCS; (3) he was "active as dba Synchronics," a sole proprietorship; (4) he worked directly with

Harry Leffler, who was in Lenexa, Kansas, on the cancellation of the original contract with "Synchronics-RCS," refund issues, and the creation of a new contract in January and February 2006; (5) he committed fraud and negligent misrepresentation during his communication with Mr. Leffler in Kansas; and (6) as "founder, owner, director and president of the sole proprietorship Synchronics," he made a new contract with plaintiff and defendant RCS.

Defendant Goldstein submitted an affidavit stating that he lives in Memphis, Tennessee. He states that he has never lived in Kansas, does not own property in Kansas, and has not transacted business, entered into a contract, or committed a tort in Kansas. Defendant Goldstein also submitted a copy of a December 12, 2005 Asset Purchase Agreement, whereby defendant Radiant purchased the business contracts, licenses, intellectual property assets, and name from defendants Synchronics and Goldstein, and an employment agreement dated January 3, 2006, whereby defendant Goldstein became the President of the Retail Division of defendant Radiant. The Asset Purchase Agreement and employment agreement show that in January and February 2006, defendant Goldstein was no longer acting as owner of Synchronics, but as an employee of Radiant.

All of plaintiff's arguments rest on the premise that defendant Goldstein may be held individually liable for his acts. But defendant sent the "critical email," which plaintiff claims created a new contract, in his capacity as an employee of Radiant. At that time, he was no longer an officer of Synchronics, as Synchronics no longer existed. To this end, all of plaintiff's unsupported allegations that defendant Goldstein was "dba Synchronics" are irrelevant. In any event, merely being an officer, director, or shareholder of a business is not enough. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him. . . ."); *see also Schlatter v. Mo-Comm Futures, Ltd.*, 662 P.2d 553, 560 (Kan. 1983) (stating that the phrase in the Kansas long-arm statute

Harry Leffler, who was in Lenexa, Kansas, on the cancellation of the original contract with "Synchronics-RCS," refund issues, and the creation of a new contract in January and February 2006; (5) he committed fraud and negligent misrepresentation during his communication with Mr. Leffler in Kansas; and (6) as "founder, owner, director and president of the sole proprietorship Synchronics," he made a new contract with plaintiff and defendant RCS.

Defendant Goldstein submitted an affidavit stating that he lives in Memphis, Tennessee. He states that he has never lived in Kansas, does not own property in Kansas, and has not transacted business, entered into a contract, or committed a tort in Kansas. Defendant Goldstein also submitted a copy of a December 12, 2005 Asset Purchase Agreement, whereby defendant Radiant purchased the business contracts, licenses, intellectual property assets, and name from defendants Synchronics and Goldstein, and an employment agreement dated January 3, 2006, whereby defendant Goldstein became the President of the Retail Division of defendant Radiant. The Asset Purchase Agreement and employment agreement show that in January and February 2006, defendant Goldstein was no longer acting as owner of Synchronics, but as an employee of Radiant.

All of plaintiff's arguments rest on the premise that defendant Goldstein may be held individually liable for his acts. But defendant sent the "critical email," which plaintiff claims created a new contract, in his capacity as an employee of Radiant. At that time, he was no longer an officer of Synchronics, as Synchronics no longer existed. To this end, all of plaintiff's unsupported allegations that defendant Goldstein was "dba Synchronics" are irrelevant. In any event, merely being an officer, director, or shareholder of a business is not enough. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him. . . ."); *see also Schlatter v. Mo-Comm Futures, Ltd.*, 662 P.2d 553, 560 (Kan. 1983) (stating that the phrase in the Kansas long-arm statute

"acting within this state" requires something more than merely serving as a director, manager, or other officer). Jurisdiction over officers of a corporation must be based on their individual contacts with the forum state. *See Ten Mile Indus. Park*, 810 F.2d at 1527. Likewise, the acts of another employee will not create personal jurisdiction over defendant Goldstein. Only one of plaintiff's allegations about defendant Goldstein suggests to the court that defendant Goldstein purposefully availed himself of the privilege of conducting activities within Kansas: the allegation that he committed fraud and negligent misrepresentation during his communication with Mr. Leffler. While the court questions whether plaintiff can ultimately show that this court has jurisdiction over defendant Goldstein, taking the allegations in plaintiff's complaint as true, the court finds that plaintiff has made a prima facie case of purposeful availment.

b.  Arise out of or Relate to

Plaintiff's claims appear to arise out of and/or relate to the minimum contacts identified above.

*2. Traditional Notions of Fair Play and Substantial Justice*

The court next turns to whether asserting personal jurisdiction over defendant Goldstein would offend "traditional notions of fair play and substantial justice." *Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945). This turns on whether it is reasonable for the court to exercise personal jurisdiction. *OMI Holdings, Inc.*, 149 F.3d at 1091. An "interplay exists between the two components [of the specific jurisdiction inquiry], such that, depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Id.* at 1091; *see Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) ("[T]he analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the

due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction."). The court considers "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings, Inc.*, 149 F.3d at 1095 (quoting *Asahi*, 480 U.S. at 113). If these factors are strong, they may establish jurisdiction even though the minimum contacts are minor. *Id.* None of the parties addressed any of the reasonableness factors, and the court finds that none of them weigh significantly in favor of defendant Goldstein such that they outweigh plaintiff's weak showing of defendant Goldstein's minimum contacts with Kansas.

With respect to the first factor, defendant Goldstein lives in Tennessee and defending a suit in Kansas would undoubtedly burden him. But "[d]efending a suit in a foreign jurisdiction is not as burdensome as in the past." *Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982) (citing *Hanson v. Denckla*, 357 U.S. 235, 250–51 (1958)). This factor is neutral.

With respect to the second factor, Kansas has an interest in adjudicating the dispute because a Kansas corporation allegedly has been injured. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483–84 (1985). On the other hand, as is explained in more detail below, plaintiff agreed to arbitrate in Tennessee claims pertaining services provided by Synchronics and its agents, employees, or representatives. This factor leans in favor of defendant Goldstein.

The third factor weighs slightly in plaintiff's favor. Because plaintiff is a Kansas corporation and is litigating its claims against other defendants in Kansas, this court would likely be the most convenient forum for plaintiff.

As for the fourth factor, this court might provide the most efficient resolution of the claim because it would prevent piecemeal litigation, an interest of the interstate judicial system. *See OMI*, 149 F.3d at 1097. But on the other hand, as detailed below, the court is sending plaintiff to arbitration with defendant Synchronics. If the court were to exercise jurisdiction over defendant Goldstein, plaintiff's claims against him would be subject to the same arbitration agreement. In other words, either way, piecemeal litigation is involved. This factor is therefore neutral.

And as for the fifth factor, there is no indication that a resolution of this claim in Kansas will have any effect on another state's social policies.

Based on these factors, the court finds that exercise of personal jurisdiction at this time is reasonable in light of the particular circumstances involved in this case. *See Pro Axess, Inc*, 428 F.3d at 1279 (quotation omitted). Any factors that weigh in favor of defendant simply do not outweigh the plaintiff's showing—albeit a weak showing—of minimum contacts in this case.

**B.     Arbitration**

The Federal Arbitration Act ("FAA") "evinces a strong federal policy in favor of arbitration." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). When an agreement contains an arbitration clause, "a presumption of arbitrability arises . . . ." *Id.* (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). The presumption of arbitrability does not apply, however, when the parties dispute whether a valid and enforceable arbitration agreement exists. *See Riley Mfg. Co. v. Anchor Class Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (citation omitted).

A defendant bears the initial burden of showing that an arbitration agreement is valid. *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262–63 (D. Kan. 2003) (citations

Case 2:06-cv-02552-EFM-JPO   Document 87   Filed 03/04/08   Page 8 of 10

omitted); *Phox v. Atriums Mgmt. Co.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002). Once the defendant has met this burden, the plaintiff must show that a genuine issue of fact remains about the agreement. *SmartText Corp.*, 296 F. Supp. 2d at 1263; *Phox*, 230 F. Supp. 2d at 1282. "Just as in summary judgment proceedings, a party cannot avoid . . . arbitration by generally denying the facts upon which the right to arbitration rests. . . ." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

Plaintiff claims that the arbitration clause does not apply because the contract between plaintiff and defendant Synchronics is terminated. According to plaintiff, the arbitration provision contemplates only resolution of disputes during the use of the software, not those arising at termination. Plaintiff also claims that the arbitration provision does not contain a survival clause.

Plaintiff misreads the arbitration agreement. Plaintiff quotes only that portion of the agreement that supports plaintiff's position. The actual language of the arbitration clause provides:

> Any disputes between you and Synchronics arising out of or related to your use or purchase of the Software, this Software License Agreement, or pertaining to any products or services subsequently provided by Synchronics, its agents, employees, or representatives, in conjunction with the preceding, shall be resolved by submission to binding arbitration in accordance with the rules of the American Arbitration Association.

Both of plaintiff's arguments fail. First, the broad language of the arbitration clause covers more than the use of the software only. It also covers claims that arise out of the purchase of the software and pertain to services that Synchronics allegedly agreed to provide in relation to the software. Plaintiff claims that defendants made false representations about the software and that defendant Synchronics failed to complete the software installation. These claims are covered by the broad language of the arbitration clause.

Second, the arbitration clause did not terminate with the contract. "Under the federal

-8-

common law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998). The presumption of continued arbitrability disappears in two situations: (1) where the parties expressly or clearly imply that they no longer want the arbitration clause to apply post-termination; or (2) where the dispute does not arise under the previous contract. *Id.* (citations omitted). Here, plaintiff fails to offer any evidence suggesting that the parties did not intend for the arbitration clause to survive termination of the contract. Nor does plaintiff argue that the dispute does not "arise under" the contract. A dispute "arises under" a previous contract when it "either involve[s] rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate[s] to events which have occurred at least in part while the agreement was still in effect." *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1026 (10th Cir. 1990). Although plaintiff claims that defendant Synchronics created a new contract with plaintiff, all of plaintiff's allegations relate to events that occurred, at least in part, while the parties were operating under the original agreement.

Based on the foregoing, the court finds the arbitration agreement enforceable and that plaintiff's claims against Synchronics should be referred to arbitration. The claims against defendant Goldstein, who plaintiff claims was "dba Synchronics," are likewise arbitrable; the agreement specifically covers agents, employees, and representatives, and, in any event, employees may enforce an arbitration agreement. *See Gibson v. WalMart Stores Inc.*, 181 F.3d 1163, 1170 n.3 (10th Cir. 1999). But dismissal is inappropriate. While section 3 of the FAA requires the court to stay litigation when claims are properly referable to arbitration, it does not provide for dismissal of the case. The FAA does not deprive the court of jurisdiction over claims subject to arbitration. *The*

*Anaconda v. Am. Sugar Refining Co.*, 322 U.S. 42, 44 (1944).  The court will therefore impose a stay as to defendants Synchronics and Goldstein.  *See Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538–39 (10th Cir. 1987).  Because the claims against defendants Synchronics and Goldstein are subject to arbitration, the court will not address the remainder of defendants' arguments.

**IT IS THEREFORE ORDERED** that the motion filed by defendants Synchronics and Goldstein, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 65) is granted in part and denied in part.  The claims against defendants Synchronics and Goldstein are stayed pending arbitration.

Dated this  4th  day of March 2008, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**