IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STRASBURG-JARVIS, INC.,           )
                                  )
                Plaintiff,        )
                                  )        Case No. 06-2552-EFM
v.                                )
                                  )
RADIANT SYSTEMS, INC., et al.,    )
                                  )
                Defendants.       )

## MEMORANDUM AND ORDER

### I.  Introduction

This breach of contract and fraud case, which involves a commercial software project, comes before the undersigned U.S. Magistrate Judge, James P. O'Hara, on the motion of the plaintiff, Strasburg-Jarvis, Inc. ("Strasburg"), to compel certain discovery from defendant Radiant Systems, Inc. ("Radiant") (**doc. 124**).  Radiant has responded (doc. 129) and Strasburg has replied (doc. 132).  As explained below, Strasburg's motion to compel is granted in part and denied in part.

Unfortunately, Strasburg has made it difficult to ascertain precisely what relief is sought, i.e., while Strasburg's briefs contain many accusations of misconduct by Radiant, the briefing fails to provide a clear and concise discussion of the matters at issue.  Based on the record presented, it appears to the court that Strasburg seeks:  (1) production by Radiant of a witness to testify pursuant to Fed. R. Civ. P. 30(b)(6) regarding the pre-purchase evaluation of certain assets acquired by Radiant from Synchronics, Inc. ("Synchronics"); (2) an order

compelling Radiant to allow William Meck, one of its employees, to respond to a question which Radiant's counsel directed him not to answer during a deposition, and for the production of related documents; (3) responses to certain interrogatories and requests for production; (4) a privilege log with regard to discovery withheld by Radiant; and (5) attorneys' fees incurred in the filing of the instant motion.

## II.  Rule 30(b)(6) Deposition

Strasburg wants the court to order Radiant to produce for deposition the "head of due diligence" for the Synchronics acquisition.  Strasburg claims it had previously requested Radiant produce this individual for deposition, but Radiant represented there was no such person and told Strasburg to "pick someone else."  Strasburg is adamant that, upon review of a few of the documents Radiant recently produced, there is a "head of due diligence." Strasburg claims Radiant "deceptively and evasively prevented Strasburg from learning the identity of the head of due diligence . . . and in bad faith refused to produce him or her for deposition."

Radiant responds by stating that its attorneys and Strasburg's former counsel, Edward K. White, III,[1] discussed the 30(b)(6) deposition of Radiant and eventually reached a compromise regarding the topics for the deposition.  Radiant says its counsel provided Mr.

---

[1] On October 20, 2008, the court granted the motion of defendants Retail Control Systems, Inc. ("RCS") and David Albert ("Albert") to disqualify Mr. White as Radiant's counsel (doc. 140).

White with proposed dates, but he never responded prior to the court's August 15, 2008 discovery completion deadline. The instant motion was filed on August 29, 2008.

The court finds Strasburg's motion for a 30(b)(6) deposition is untimely. During late June and July 2008, i.e., well in advance of the August 15, 2009 discovery completion deadline, the parties discussed Radiant's production of a 30(b)(6) witness. On or about July 24, 2008, Strasburg provided Radiant with a list of proposed deposition topics. The following day, Radiant accepted the proposal and suggested tentative dates for the deposition. Strasburg never accepted any of the proposed dates or provided any alternative dates. Radiant followed up with Strasburg's counsel several times, but Strasburg never responded by letter or service of a 30(b)(6) notice. The discovery deadline expired August 15, 2008. Strasburg never raised this issue during the conferences among counsel in the preparation of the jointly proposed final pretrial order. Nor did Strasburg raise this matter during the final pretrial conference on August 27, 2008, despite significant discussions among the court and counsel regarding outstanding discovery matters (*see* doc. 133, at 35 and 37). Radiant argues that even prior to the filing of the instant motion, during the parties "meet and confer" conference, this matter was not discussed.

Strasburg had ample opportunity to take a 30(b)(6) deposition of Radiant before the discovery deadline expired. There has been no showing by Strasburg of circumstances that warrant the taking of the deposition at this stage of the case. Strasburg's motion with regard to this matter is denied.

### III.  William Meck's Deposition

Strasburg seeks an order compelling Radiant to allow William Meck to respond to a question which Radiant's counsel directed him not to answer during his deposition. Strasburg also seeks production of documents related to the testimony.  Radiant argues the question posed to Mr. Meck relates to new "point-of-sales" releases which are not only irrelevant but are highly confidential and proprietary.  Radiant claims the only apparent motive in asking Mr. Meck the question was to harass and oppress Radiant.  Radiant also argues this issue was never discussed before the filing of this motion during the "meet and confer" process required by D. Kan. 37.2.

With regard to the deposition inquiry at issue, Strasburg failed to comply with D. Kan. Rule 37.1, in that the instant motion is not accompanied by a copy of the relevant portions of Mr. Meck's deposition.  The court could (and arguably should) deny this portion of Strasburg's motion on this basis alone.  The court could also deny this portion of the motion on the grounds there is no evidence this matter was ever discussed prior to the filing of this motion, as required by D. Kan. Rule 37.2.  Despite these significant procedural deficiencies, the court has elected to address the merits of this matter, as Radiant attached a copy of the relevant portions of Mr. Meck's deposition transcript to its response to the instant motion.

On August 8, 2008, Mr. Meck appeared for his deposition without service of a subpoena at a time and place agreed by the parties.  During the course of the deposition, Mr. White (Strasburg's attorney at the time) asked:  "Today, in 2008 that is, are you

developing any new products on this point-of-sales area?"[2]  Mr. Meck responded: "New

products, I – I don't know that I understand the question."[3]  The following discussion ensued:

> Mr. Barton [Radiant's attorney]: I'm not sure that I'm going to
> allow him to answer that question, even if he knows.  I mean,
> we're getting into proprietary areas that I frankly don't think are
> relevant to this case.
>
> Mr. White:  You and your relevance.  I find it hilarious.
>
> Mr. Barton: I'm glad I'm entertaining you, Ted.
>
> Mr. White: You are.
>
> Mr. Barton: I am going to instruct the witness not to answer the question.
>
> Mr. White: That's what I wanted to hear.  We will take it up with the judge.
>
> Mr. Barton: Good.[4]

For reasons that should be obvious, the court's first inquiry when requested to issue

an order regarding the failure of a non-party to respond to a deposition question is whether

the court has jurisdiction over the person to whom the court's order would be directed.  The

proper procedure for obtaining jurisdiction over a non-party deponent, of course, is service

of a subpoena pursuant to Fed. R. Civ. P. 45.[5]  But here, nothing in the record indicates Mr.

Meck was ever served with a subpoena.  Therefore, while Mr. Meck appeared for his

---

[2] Deposition Testimony of William Meck, at 41 (doc. 129-5).

[3] *Id.*

[4] *Id.* at 41-42.

[5] *Cuthbertson v. Excel Indus., Inc.*, 179 F.R.D. 599, 602 (D. Kan. 1998).

deposition and gave testimony under oath at Strasburg's request, the court technically did not acquire jurisdiction over him since he had not been served with a subpoena.  On the other hand, it is fairly clear Mr. Meck did not personally refuse to answer the question at issue. Rather he did so at the direction of his employer's attorney.  The court reasonably infers Mr. Meck is within the control of Radiant's counsel for the purpose of discovery in this case. The court, therefore, addresses the merits of the issue of whether Radiant's counsel improperly instructed Mr. Meck not to answer.

"The key to deposition practice is set out in Fed. R. Civ. P. 30(c) which provides that examination and cross-examination of witnesses may proceed as permitted at the trial."[6]

> Objections at the time of the examination to any aspect of the conduct of the deposition are to be noted in the record, but the examination is to proceed with the testimony taken subject to the objections. Pursuant to Fed. R. Civ. P. 30(d), objections to the evidence shall be stated concisely and in a non-argumentative and non-suggestive manner.  A deponent may be instructed not to answer a question *only* when it is necessary to preserve a privilege or to enforce a limitation on evidence directed by the court, or to present a motion for a protective order as to the manner in which the deposition is being taken.[7]

Aside from Mr. White's childish commentary about the validity of Mr. Barton's relevance objection, Mr. Barton's instruction to Mr. Meck not to answer the question about new products was premature and thus technically improper.  The question at issue required only a "yes" or "no" answer.  Any objection based on relevancy could have been stated, but

---

[6] *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 568 (D. Kan. 1997).

[7] *Id.* (citation omitted) (emphasis added).

then Mr. Meck should have been permitted answer the narrow question posed. Giving Mr. Barton the benefit of the doubt, he may have anticipated that if Mr. Meck were to answer in the affirmative, then the subsequent line of inquiry would seek information that was proprietary in nature. Nevertheless, since proprietary information is not necessarily shielded from discovery, the proper procedure would have been to allow Mr. Meck to respond to the narrow question at issue. And then, if Strasburg's subsequent line of inquiry actually sought proprietary information, Mr. Meck could have been instructed not to answer to allow Radiant an opportunity to file a motion for protective order. No such motion was filed by Radiant after Mr. Meck's deposition.

The court cannot comfortably ascertain whether Strasburg's sole purpose in asking the question at issue and any subsequent related inquiry was to harass or oppress Radiant. That could be true, but the court is inclined to infer otherwise. Regardless, the relevance of this particular line of inquiry is not readily apparent. With the limited record presented here, the court frankly is at a loss to see what relevance of Radiant's *current* product development activities have to do with a product that allegedly underperformed in the past. The court acknowledges relevancy is broadly construed for pretrial discovery purposes. Thus, at least as a general proposition, "a request for discovery should be considered relevant if there is 'any possibility' the information sought may be relevant to the claim or defense of any party."[8] "When the request is overly broad on its face or when relevancy is not readily

---

[8]*Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006) (citation omitted).

apparent, the party seeking the discovery has the burden to show the relevancy of the request."[9]  Strasburg's briefs are conspicuously silent on why this inquiry is relevant to the issues involved in this litigation.  Therefore, the court respectfully declines Strasburg's implicit invitation to re-open Mr. Meck's deposition.

As to Strasburg's request for documents "related to the testimony," the court finds Strasburg has failed to provide sufficient detail as to exactly which documents are sought. The court, therefore, denies the motion as to this issue.

### IV.  Interrogatories and Requests for Production of Documents

Strasburg requests that the court compel Radiant to provide complete answers to Interrogatory Nos. 2, 3, and 7, and to produce all documents responsive to Request for Production Nos. 1-3, 5-8, 10, and 12-14.  Strasburg also requests Radiant provide a privilege log as to documents Radiant has withheld as privileged.

Interrogatory No. 2 provides:

> Please identify each person whom you expect to call as an expert or fact witness upon the trial of this case, or at any pre-trial proceeding in this case, and for each such expert or fact witness, state the subject matter upon which the witness is expected to testify, the substance of each of the opinions or facts to which the witness is expected to testify, and a summary of the grounds for each such opinion or fact.

Radiant responded:

> Radiant objects to Interrogatory No. 2 to the extent it relates to fact witnesses on the grounds that it seeks the

---

[9] *Id.* (citation omitted).

> disclosure of documents and information protected by the work-product immunity doctrine, and because it is overly broad and unduly burdensome. Radiant has not yet determined which expert witnesses it expects to retain to call at trial.

In its response to the instant motion, Radiant argues that to the extent Interrogatory No. 2 applies to fact witnesses, it exceeds the scope of permissible discovery and invades the work product of Radiant's counsel. Radiant states, though, it has provided and will continue to provide disclosures regarding fact witnesses in accordance with Fed. R. Civ. P. 26(a)(1) and the requirements of the court's final pretrial order. As to expert witnesses, Radiant states that, out of an abundance of caution, Radiant timely disclosed Mr. Meck as a fact witness who might give some testimony which, because of its technical nature, arguably extends beyond the scope of Fed. R. Evid. 701 and into the territory covered by Fed. R. Evid. 702. Radiant argues that no report was required since Mr. Meck is essentially a fact witness, was not retained, and does not regularly testify as an expert. Radiant further argues Mr. Meck was extensively deposed by Strasburg regarding the subject software and its capabilities, his personal knowledge of the project at issue, and his opinions regarding the suitability of the CounterPoint product for Strasburg's business. Radiant argues it has advised Strasburg's counsel that it does not expect Mr. Meck to testify to any opinions or observations on any topics not touched upon in his deposition or in the exhibits marked in that deposition. Radiant claims it does not understand what other information Strasburg seeks, and Strasburg has not been willing or able to explain it. Notably, Strasburg's reply brief does not address any of Radiant's above-referenced arguments.

The court overrules Radiant's objection that Interrogatory No. 2 seeks disclosure of documents protected by the work-product immunity doctrine. The interrogatory clearly does not request documents. In any event, Radiant's representation that it will comply with the requirements of the pretrial order regarding disclosure of fact witnesses and its prior disclosure with regard to Mr. Meck is adequate. Strasburg's motion with regard to this interrogatory is denied.

Interrogatory No. 3 provides:

> With respect to each document responsive to Defendant's First Request for Production of Documents, below, that was at one time in your possession, custody or control, but (because of loss, transfer, destruction or otherwise) is no longer in your possession, custody or control, please: (i) identify the document, (ii) state the current or last known custodian of the document or any copies thereof, (iii) state why the document is no longer in your possession, custody or control, and (iv) identify all persons with material knowledge of any of the reasons why the document is no longer in your possession, custody or control.

Radiant originally responded it was unaware of any documents responsive to this interrogatory except some emails of former Synchronics employees which may have been lost in connection with the migration of those employees' emails to the Radiant system. In response to the instant motion, Radiant claims Strasburg seems to be dissatisfied with the volume of emails to and from Mr. Meck produced in this case. Radiant argues that Mr. Meck explained he does not use email with regularity, and that Radiant has produced all the emails Mr. Meck could find.

In its reply brief, Strasburg claims Mr. Meck testified his correspondence and other work product for the subject project was no longer available to produce. Strasburg claims the paucity of production demonstrates the need for a complete answer as to what happened to the all the missing documents, not just Mr. Meck's purged files.

It does not appear Radiant has provided a complete answer to this interrogatory, in that Radiant has not provided the specific details as requested in subparts (i)-(iv) other than as to Mr. Meck's emails. Strasburg's motion to compel in this limited respect is granted, i.e., Radiant shall supplement its answer or shall provide a sworn answer that it has fully responded to this interrogatory.

Interrogatory No. 7 requests that Radiant "identify each person within Radiant who in any way was responsible for a part of the Strasburg relationship including but not limited to billing personnel, customer service, contract management, technical support or other, and explain in detail what was done by each in this regard."

Radiant responded:

> Radiant objects to Interrogatory No.7 because it contains terms and phrases such as "in any way," "responsible" and "relationship" which are vague and inapplicable. Subject to the foregoing objections, Radiant has produced or will produce the documents in its possession that reflect interactions between its employees and employees of Strasburg, and the burden of deriving the information contained in those documents is substantially the same for Strasburg as it is for Radiant.

In response to the motion, Radiant argues that although it objected to the semantic reference to a "relationship," it identified and produced pursuant to Fed. R. Civ. P. 33(d) all

notes that identified all of the Radiant employees who had contact with Strasburg, the date of the contact, the participants in the call, and a summary of the discussion.  Radiant argues it has fully responded to Interrogatory No. 7.  In the reply, Strasburg argues Radiant has not produced any records from the billing department or documents from the "contract" department related to the cancellation by Strasburg of the software licensing contract on January 20, 2006.

Here again, it is unclear whether Radiant has fully complied with this interrogatory.  Therefore, the court directs Radiant to provide a supplemental answer to this interrogatory by producing documents from the "billing" or "contract" departments, *or* by providing a sworn answer that no further documents responsive to this interrogatory exist.

## V.  Privilege Log

Before discussing the specific document requests at issue, the court will address Strasburg's request that Radiant be required to provide a detailed privilege log pursuant to Fed. R. Civ. P. 26(b)(5).  Strasburg argues that, on August 26, 2008, RCS and Albert filed a motion (doc. 117) requesting the court to compel Strasburg to produce a privilege log or, in the alternative, to produce documents withheld from production on the basis of privilege.  On August 28, 2008, Radiant filed a motion (doc. 123) joining RCS and Albert's motion, which the court granted (doc. 138).  Strasburg argues that Radiant refuses to produce documents related to Interrogatory No. 2 and responsive to Request Nos. 1-5, 10, and 12-14 based on privilege, but refuses to provide a privilege log.  Strasburg argues this is bad faith.

In response, Radiant argues that its previous request for a privilege log is distinguishable from Strasburg's current request.  Strasburg failed to raise *any* privilege objections when responding to the document requests served by Radiant and RCS, and represented that all documents had been produced with its initial disclosures.  Radiant later discovered that Mr. White actually had withheld pre-litigation emails which he determined were sent or received while he was wearing his "lawyer hat" as opposed to his "facilitator hat."  When Radiant and RCS requested a log of those pre-litigation emails, Mr. White refused, prompting the filing of defendants' motion to compel.  Only after defendants filed their motion did Mr. White insist Radiant produce a privilege log.  Radiant claims it advised Mr. White that it was willing to produce a log of pre-litigation documents but there were none, only post-litigation documents.

Significantly, Radiant also argues that when the parties had their good faith conference prior to filing the instant motion, Strasburg's request for a privilege log was limited to Request No. 10 regarding the joint defense communications among counsel for Radiant, RCS, and Albert.[10]  Specifically addressing Request No. 10, Radiant argues that a privilege log is not required by Fed. R. Civ. P. 26(b)(5), but rather all that is required is a description of the withheld documents sufficient to determine the applicability of the

---

[10] Strasburg has not disputed that Radiant, RCS, and Albert have a joint defense privilege in this litigation, and therefore the court need not address whether the privilege has been properly claimed.

privilege.  In support, Radiant cites *Queen's University at Kingston v. Kinedyne Corp.*, in which the late Hon. Earl E. O'Connor, U.S. District Judge, stated:

> The rule [26(b)(5)] does not attempt to define for each case what information must be provided when a party asserts a claim for privilege or work product protection.  Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories . . . .[11]

Radiant argues Request No. 10 actually describes the documents being withheld because, on its face, the request clearly seeks communications subject to the joint defense privilege.  Radiant argues its response to the request clearly satisfies Rule 26(b)(5) since it expressly raises the joint defense privilege and represents there are no pre-litigation documents responsive to the request.  In short, Radiant argues there are no pre-litigation documents to log and only post-litigation communications with counsel for RCS and Albert that are subject to the joint defense privilege.

As to the balance of the requests, Radiant argues that Strasburg's insistence upon a privilege log should be denied due to Strasburg's lack of a good faith effort to understand what was being withheld.  Radiant argues these requests were worded in a such a way that post-litigation work product and attorney-client communication might be called for, simply because they analyzed or referred to events that took place during the Strasburg project. Radiant claims it has explained to Mr. White several times that no pre-litigation documents

---

[11] 161 F.R.D. 443, 446 (D. Kan. 1995).

have been withheld on the basis of privilege, other than in connection with the Synchronics asset purchase transaction.  Radiant argues that no lawyers other than Mr. White were involved in the Strasburg project, and Radiant certainly did not expect litigation until it was sued.  Radiant argues that Strasburg's request for a privilege log is for no other reason than gamesmanship or to inflict undue burden on the opposing party.

Lastly, Radiant argues that most of the requests at issue are objectionable for a variety of reasons relating to the breadth of the request or the burden of a complete response. Radiant argues that if a request is objectionable for being overly broad or unduly burdensome, and also is objectionable because it would call for the production of some privileged documents, the producing party must describe the privileged documents pursuant to Rule 26(b)(5) only *after* the court overrules the "overly broad" and "unduly burdensome" objections.

As relates to the need for a privilege log, Strasburg's entire reply to Radiant's lengthy arguments in opposition to the instant motion is as follows:

> Radiant admits that a privilege log is required, but refuses to produce one. In a per se bad faith response, Radiant claims that *Strasburg's request* for document production is Radiant's privilege log: ". . . the *request itself* describes the documents being withheld . . ."(Radiant Response pg 17, ln 19). Therefore, Radiant admits that it did not even attempt to produce an abbreviated, or by "category" description, as contemplated in their cited case for voluminous documents. [*Queen's University at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, 446 (D. Kan. 1995)].   Radiant should be sanctioned for this ridiculous response. It is unconscionable for Radiant to claim that Strasburg's document production request satisfies Radiant's obligation to produce a privilege log (emphasis in original).

Radiant's response raises numerous issues with regard to production of a privilege log. As noted above, though, Strasburg's reply brief addresses *only* Radiant's argument that a privilege log was not required since Request No. 10 itself describes the documents being withheld. Most notably, Strasburg does not address Radiant's argument that Radiant should not be required to provide a privilege log as to the documents it is withholding that are post-litigation, joint defense communications among counsel for Radiant, RCS, and Albert. The undersigned magistrate judge, despite having left private practice, appreciates that Radiant's argument raises a profoundly significant issue – legally, economically, and practically. Simply stated, the issue presented is whether, for purposes of requiring a Rule 26(b)(5) privilege log, there is an absolute, bright-line distinction between pre-litigation privileged communications and communications after suit is filed. Although Radiant repeatedly has made such distinction in relation to its obligation to provide a privilege log, it has not cited any authority which addresses such a distinction. And Strasburg's briefing is completely silent on this issue. The court has conducted some limited research and it appears it would be a vast overstatement that post-litigation privileged material *always* must be logged at the risk of suffering a waiver of the privilege, and likewise it would be completely inaccurate to say (as Radiant says) that litigants can *never* be required to provide such post-litigation logs.[12] Since neither Strasburg nor Radiant has seen fit to sufficiently brief the issue, the

___

[12] *See Carbajal v. Lincoln Benefit Life Co.*, No. 06-CV-884, 2007 WL 1964073, at *2-3 (D. Colo. July 2, 2007) (citing *Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002). *See also McCord v. State Farm Fire & Cas. Ins., Co.*, No. 06-4998, 2008 WL 1988850, at *3 (E.D. La. May 2, 2008); *Harmelin v. Man Fin. Inc.*, No. 06-1944, 2007 WL

court is unwilling to definitively rule the privilege log issue here, as any ruling could be cited as precedent and have ramifications that far exceed this case.  For an issue of this magnitude, the court believes the more prudent course of action is to await a case with a far better developed set of briefs.

Request No. 10 seeks "[a]ll documents (including letters, e-mails, notes and notes of conversations) constituting or referring to communications between or among any attorney, including any employee or agent of any attorney, of Radiant, on the one hand, and any attorney, employee or agent of Goldstein, Synchronics, Albert and RCS, on the other." Radiant responded:

> Radiant objects to Request No. 10 on the grounds that it seeks documents protected from disclosure by the attorney-client privilege, the work-product immunity doctrine and other joint defense privileges.  In addition, Radiant objects to Request No. 10 on the grounds that is it is overly broad and unduly burdensome, and seeks documents neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing objections, Radiant states that it has already produced all documents before this litigation was filed that responsive to Request No. 10.

---

2345290, at *2 (E.D. Pa. Aug. 15, 2007); *Miller v. Pruneda*, 236 F.R.D. 277, 284 (N.D. W.Va. 2004); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974, 2006 WL 5097357, at *8 (N.D.N.Y. 2006); *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700SASHBP, 2005 WL 545218, at *7 (S.D.N.Y. Mar. 8, 2005); and *Epling v. UCB Films*, Nos. 98-4226 & 98-4227, 2000 WL 1466216, at *18-19 (D. Kan. Aug. 7, 2000) (cited in *Horton v. United States, supra*).

The court finds Request No. 10 over broad on its face. In making this finding, the court need not address the above-referenced argument of Radiant regarding its obligation to provide a privilege log as to this request. However, the court cautions Radiant that in the future, it would be advisable before raising this argument in this district to review the well-established case law regarding privileges and privilege logs.

As to production of a privilege log with regard to the remaining requests, the court has reviewed the emails between counsel prior to filing the instant motion and finds the discussions regarding production of a privilege log were specific to Request No. 10. Therefore, the court will limit its rulings as to the remaining requests to Radiant's other objections.

Request Nos. 1-3 seek "[a]ll documents (including letters, e-mails, notes and notes of conversations) constituting or referring to communications" between or among any employees or agents of Radiant, Strasburg, RCS, Synchronics, or Mr. Goldstein, in regard to Strasburg or the subject project. Strasburg argues that virtually nothing was produced by Radiant responsive to these requests "compared to what must exist."

Radiant originally objected to these requests to the extent they seek production of documents protected by the attorney-client privilege or the work-product immunity doctrine. Subject to those objections, Radiant stated it has produced or will produce all non-privileged documents in its possession, custody, or control responsive to these requests. In response to the instant motion, Radiant claims it has produced all documents responsive to these requests, other than the above-described post-litigation privileged notes and research of its counsel.

Radiant argues the reason there are not many documents responsive to these requests is Radiant had no direct role in the project and never entered into a new contract with Strasburg.

If it has not already done so, Radiant shall provide Strasburg with a sworn supplemental response stating it has provided Strasburg with all documents responsive to these requests, other than those withheld as privileged or work product.  But otherwise Strasburg's motion as to these requests is denied.

Request No. 5 seeks "[a]ll documents delivered by you to, or received by you from, or generated by, any expert or fact witness whom you intend to call or may call at trial or at any pre-trial proceeding in this case."

Radiant responded:

> Radiant objects to Request No. 5 to the extent it seeks the production of all documents ever generated by any fact witnesses on the grounds that it is overly broad, unduly burdensome and harassing, and because its seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, and because it seeks the discovery of documents protected from disclosure by the attorney-client privilege and the work-product immunity doctrine. With respect to documents sent to or received from retained experts expected to testify at trial, Radiant states that it has not yet determined which expert witnesses, if any, it expects to call at trial.

In its response to the instant motion, Radiant argues Request No. 5 seeks, without temporal or subject matter limitation, every document Radiant ever exchanged with any expert or fact witness.   Radiant acknowledges that a request similar to this frequently is

utilized to obtain documents exchanged between a party and a retained testifying expert and, if properly limited, such a request is reasonable.  Radiant claims Strasburg expands the request to fact witnesses, rendering it unreasonably broad and invasive of the attorney-client privilege and work product protection.  Radiant also argues it has not retained outside experts and the only "potential" expert it has identified is Mr. Meck, a fact witness whose testimony might be deemed to stray beyond Fed. R. Evid. 701 into Fed. R. Evid. 702 territory just because of its technical nature.

The court finds Request No. 5 over broad.  The court, therefore, need not address Radiant's other objections.  Strasburg's motion is denied as to this request.

Request No. 6 seeks "[e]ach version of the resume or C.V. for any expert or fact witness whom you intend to call at trial or at any pre-trial proceeding in this case that was created or printed on the last 10 years."

Radiant responded:

> Radiant objects to Request No. 6 to the extent it seeks the production of all C.V.s and resumes for every fact witnesses on the grounds that it is overly broad, unduly burdensome and harassing, and because its seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. With respect to the resume or C.V. for retained experts expected to testify at trial, Radiant states that it has not yet determined which expert witnesses, if any, it expects to call at trial.

Notwithstanding the fact Radiant did not address Request No. 6 in its responsive brief, the court finds this request over broad.  The court, therefore, need not address Radiant's other objections.  Strasburg's motion is denied with respect to Request No. 6.

The next two requests seek related information.  Request No. 7 seeks "[e]ach expert affidavit made in the last 10 years by, and each transcript of expert testimony given in the last 10 years by, any expert witness whom you intend to call at trial or at any pretrial proceeding in this case."  Request No. 8 requests "[a]ny professional publication authored in whole or in part in the last 10 years by any expert witness whom you intend to call at trial or at any pre-trial proceeding in this case."

In response to these requests, Radiant states "it has not yet determined which expert witnesses, if any, it expects to retain to call at trial."  However, in its response to the instant motion, Radiant argues these requests are duplicative of the expert disclosure requirements of Fed. R. Civ. P. 26(a)(2) and the scheduling order entered in this case, which do not apply to a fact witness such as Mr. Meck who does not regularly testify as an expert.

Strasburg did not respond in any way to Radiant's above-referenced arguments in its reply.  The court, therefore, finds no further responses to these requests are required.  Strasburg's motion as to Requests Nos. 7 and 8 is denied.

Request No. 10 has already been ruled.  Strasburg's motion with regard to this request is denied.

Request No. 12 seeks:

> All documents that were collected, compiled or produced as part of Radiant's due diligence in Radiant's acquisition of the assets of Synchronics including the CounterPoint SQL software. This should include, but not be limited to, evaluations of the CounterPoint SQL software, by experts and others; critical evaluations of the performance and customer satisfaction of the software including complaint letters of customers and others;

market projections and studies of what customers would be appropriate for the software; comments on, notations or evaluations of Strasburg as a customer. Any and all materials used by Radiant in making its decision to purchase the Synchronics assets and CounterPoint SQL software.

Radiant responded:

Radiant objects to Request No. 12 on the grounds that it is overly broad, unduly burdensome and harassing, and because it seeks the discovery of documents protected by the attorney-client privilege. Radiant further objects to Request No. 12 on the grounds that it seeks the discovery of documents and information that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, Radiant will, subject to the protective order entered in this case, produce any documents reviewed or generated in the due diligence process that refer to Strasburg, and those portions of executive summaries of the analysis of the target market for CounterPoint and those portions of executive summaries of the analysis of the software that competes with CounterPoint in its market.

In its response to the instant motion, Radiant argues Request No. 12 is overly broad and unduly burdensome on its face, seeking thousands of documents, only a few of which are marginally relevant at best. Radiant argues that Strasburg has made no effort to justify the breadth of its request, nor has it explained how the documents its seek are relevant.

The court finds Request No. 12 over broad and seeks irrelevant documents. Strasburg's motion as to this request is denied.

Request No. 13 seeks "[a]ll documents executed by Radiant in its acquisition of Synchronics assets including pre-closing documents, final closing documents and post-closing documents."

Radiant responded:

> Radiant objects to Request No. 13 on the grounds that it
> is overly broad, unduly burdensome and harassing, and because
> it seeks the discovery of documents protected by the
> attorney-client privilege. Radiant further objects to Request No.
> 13 on the grounds that it seeks the discovery of documents and
> information that are neither relevant to the subject matter of this
> litigation nor reasonably calculated to lead to the discovery of
> admissible evidence. Subject to the foregoing objections,
> Radiant will, subject to the protective order entered in this case,
> produce the Asset Purchase Agreement, as amended, and the
> schedules attached thereto.

In its response, Radiant argues the closing documents from the Synchronics acquisition do not mention Strasburg or the Strasburg project and thus they are irrelevant to Strasburg's claims. Radiant points out this case is about a software project, not the asset purchase transaction. Nevertheless, Radiant states it has produced exactly what it represented it produced, rendering this portion of Strasburg's motion moot.

The court finds Request No. 13 is over broad and seeks irrelevant documents. Radiant will not be required to produce any additional documents. Strasburg's motion as to this request is denied.

Request No. 14 seeks "[a]ll internal communications and files of Radiant in regard to the Strasburg relationship including but not limited to billing, customer contact, and responsible person files." Strasburg argues that Radiant has not produced all the documents which it "knows" Radiant has that are responsive to this request.

Radiant originally objected to this request on the grounds it seeks documents and information protected from disclosure by the attorney-client privilege and the work-product

immunity doctrine.  Radiant stated, subject to the foregoing objections, it would produce all non-privileged documents in its possession, custody, or control responsive to Request No. 14 at a mutually agreeable time and place.  In its responsive brief, Radiant claims that, except for post-litigation work product and privileged communication, it has produced all such documents, including call logs and emails.  Radiant explains that the volume of the documents produced is sparse simply because Radiant's relationship with Strasburg was limited to the software license agreement.

If Radiant has not previously done so, it shall provide Strasburg with a sworn supplemental response stating that it has provided Strasburg with all documents responsive to this request, other than those being withheld as privileged or work product. But otherwise, Strasburg's motion as to this request is denied.

## VI.  Award of Fees

Strasburg seeks an award of attorneys' fees incurred in filing of the instant motion. In its response, Radiant requests attorneys' fees incurred in having to respond to the instant motion.  Given the shortcomings in the record presented, and in light of the above-referenced rulings, the court denies both parties' requests.

## VII.  Conclusion and Order

In consideration of the foregoing,

IT IS HEREBY ORDERED that Strasburg's motion to compel **(doc. 124)** is granted in part and denied in part.  Radiant shall comply with this order by **January 30, 2009**.

Dated this 20th day of January, 2009 at Kansas City, Kansas.

s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge